NEW-YORK PRACTICE REPORTS. 25

Gaughran agt. One hundred and fifty-one tons of Coal.

## UNITED STATES CIRCUIT COURT.

JOHN GAUGHRAN agt. ONE HUNDRED AND FIFTY-ONE TONS OF COAL.

A *delivery* of an article according to the terms of a bill of lading, and the taking possession of it by the consignee, under the expectation that the *freight will be paid at the time*, is not such a delivery as parts with the *lien* for the freight.

A delivery by a party must be made with the *intent of parting with his interest* in the property, or under circumstances in which the law will infer such an intent. The act of the party is characterized by the intent with which it is performed, either expressly or by necessary implication.

*New - York, September*, 1859.

THE bill was filed in this case to recover freight for the transportation of one hundred and fifty-one tons of coal.

BENEDICT, BURR & BENEDICT, *for appellant.*
BURRILL, DAVISON & BURRILL, *for appellee.*

NELSON, C. J. According to the bill of lading, the coal was to be delivered at Peck Slip, East River, to William Jarvis or his assigns, on payment of freight at $1.85 per ton. The libel charges that the vessel arrived with the coal at the port of New-York, and notice was given to the consignee, who requested that it might be delivered at his place of business in the city (No. 59 Ann street), and agreed to pay for expense of such delivery at the rate of twenty-five cents per load; that the coal was delivered accordingly, in good order and condition, and the same was by him accepted and received; and that the consignee, notwithstanding he accepted and received the coal in good order and condition, refused to pay the said freight and expenses of delivery, although often requested.

An answer was put in, but it is not material to notice it, as the case was heard in the court below and in this court, upon the admission by the respondent, that the facts were as stated

in the libel. We lay out of view the deposition taken and produced in this court, as not in time to be received and read as part of the proof.

The question presented is, whether or not, upon the case as made out in the libel, the libelant had parted with his lien upon the coal for the freight, by the delivery. If he has done so, he cannot pursue and attach it in admiralty, as still a security for the freight money. The respondent must defeat the claim, if at all, upon a dry point of law, as the case admitted assumes that the money is justly due to the libelant, and the rights of no third or innocent party exist or intervene.

Now, the mere manual delivery of the coal by the carrier to the consignee does not of itself operate necessarily to discharge the lien. The delivery must be made with the intent of parting with his interest in it, or under circumstances in which the law will infer such an intent. The act of the party is characterized by the intent with which it is performed, either expressly or by necessary implication. A delivery, therefore, of the article, according to the terms of the bill of lading, and the taking possession of it by the consignee, under the expectation that the freight will be paid at the time, is not such a delivery as parts with the lien.

I remember a class of cases where, by the bill of lading, the freight was to be paid on delivery, but according to usage the bills were not presented till two or three days afterwards, that the consignee might have time to ascertain the correctness of the shipment of the goods, and in which it was held, that, as between the parties, the delivery was conditional, not to become absolute till the payment of the money. It was otherwise where the rights of third parties intervened. These cases illustrate the principle above stated.

Now, as I understand the case, as presented in the libel, the demand of freight was made as soon as the coal was delivered, and the delivery was made under an expectation of such payment. According to the bill of lading, the coal was to be delivered at Peck Slip, but, by an arrangement between the parties, the place was changed to No. 59 Ann street. This

changed the mode of delivery; instead of being delivered at the dock or the ship's tackle, it was delivered in carts, and when thus delivered, to the satisfaction of the consignee, the payment was demanded. This, I think, is the fair interpretation and understanding of the state of facts admitted, and in this view it is clear that the lien was not discharged.

As to the objection that the court below included in its decree the amount of the cartage across the city, it is not sustained, as will be seen by a reference to the decree itself. It allows the cartage to be deducted from any payments that may have been previously made. Whether any had been made, nowhere appears; and if they had been, unless specially made upon the freight, the application to the cartage would have been unobjectionable.

Decree affirmed.